FILED

MAR 14 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>CONSTRUCT DATA PUBLISHERS a. s.,<br>a foreign corporation, also doing business<br>as FAIR GUIDE,<br><br>WOLFGANG VALVODA,<br>individually, and as an owner, officer, or director<br>of CONSTRUCT DATA PUBLISHERS a. s., and<br><br>SUSANNE ANHORN,<br>individually, and as an owner, officer, or director<br>of CONSTRUCT DATA PUBLISHERS a. s.,<br><br>　　　　　Defendants. | 13 CV 1999<br>JUDGE THARP JR.<br>MAGISTRATE JUDGE MASON |

### COMPLAINT FOR PERMANENT INJUNCTION
### AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.　　The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### JURISDICTION AND VENUE

2.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in this district under 28 U.S.C. § 1391(b), (c), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6. Defendant Construct Data Publishers a.s. ("Construct Data"), also doing business as Fair Guide, is a foreign corporation with its principal place of business at Suché Mýto 1, 811 03 Bratislava, Slovakia. Construct Data transacts or has transacted business in this district and throughout the United States.

7. Defendant Wolfgang Valvoda ("Valvoda") is or has been an owner, officer, or director of Construct Data. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Valvoda, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

8. Defendant Susanne Anhorn ("Anhorn") is an owner, officer, or director of Construct Data. At times material to this Complaint, acting alone or in concert with others, she

has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Anhorn, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

9. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

10. Since at least 2000, Defendants have engaged in a plan, program, or campaign to induce businesses and nonprofit organizations in the United States and other countries to pay for unordered listings in an Internet directory. Those targeted by Defendants' scheme include small retailers, home-based businesses, local associations, and a wide range of other entities (hereinafter "consumers") who have attended or plan to attend trade shows or exhibitions.

11. Defendants send mailings to targeted consumers, in the United States and elsewhere, with whom Defendants have no preexisting relationship. The mailings are not preceded by any type of telemarketing call or other attempt to sell listings in Defendants' Internet directory.

12. Defendants' mailings are designed so that they appear to be related to a trade show or exhibition that the targeted consumer recently attended or registered to attend in the future. First, the envelope specifically states that its contents include trade show documents. Although Defendants are based in Slovakia, the return address on the envelope is a mail drop in the United States, such as P.O. Box 4050, Naperville, IL 60567-9910. Inside the envelope is a cover letter addressed to the consumer, a pre-printed form, and a business reply envelope

3

addressed to the mail drop.

13. The cover letter does not begin by explaining Defendants' business or offering to sell the consumer a listing in Defendants' Internet directory. Instead, in the upper right corner, under the heading "Current entry," the letter identifies a specific trade show or exhibition and its organizer. The text below this states that the consumer's "pre-registered data is listed under the above event," and that this data is "in the exhibitors directory" as shown on the enclosed form. The letter requests that the consumer "update" the listing shown on the form to ensure its accuracy, and warns of negative consequences if the listing contains errors.

14. The enclosed form instructs the consumer to confirm the accuracy of the directory listing shown on the form by checking a box next to each part of the listing, or by correcting the information "right away in the spaces below!" The form then lists basic contact information for the consumer such as company name, address, telephone number, and website address. The form states that this information "has been published to date for free under the following event," after which it lists the same trade show or exhibition referenced in the cover letter, and the entity that organized the event.

15. Defendants' form does not purport to be soliciting a contract from the consumer for new business, but instead falsely suggests that the parties have a preexisting relationship. The form also falsely suggests that Defendants' directory listing for the consumer is directly related to the consumer's participation in the trade show or exhibition listed on the form.

16. Only in fine print at the bottom of the form are consumers told that by signing and returning the form, they will be deemed to have agreed to pay "1717 USD," annually for three years, to place an "advertisement" in Defendants' Internet directory. Many consumers who receive Defendants' form do not see or read this fine print and believe from the remainder of the

4

form that they are simply being asked to confirm and update their contact information for an existing directory listing.

17. In numerous instances, consumers follow the form's instructions by updating their company information, believing that they are simply updating an existing directory listing, rather than agreeing to purchase an entirely new service from a company with which they have not previously done business. In many instances, the person who signs and returns Defendants' form is not even authorized to enter into contracts or purchase services on the consumer's behalf.

18. Consumers who sign and return Defendants' form subsequently receive an invoice from Defendants seeking payment of $1717 for the first year of the purported three-year contract. Defendants' invoice typically arrives at least three weeks after the consumer signed and returned the form, long after Defendants' ten-day cancellation policy has expired. The invoice directs the consumer to remit payment to Defendants' account at Tatra Banka a.s., a Slovakian bank.

19. Upon receiving Defendants' invoices, many consumers pay, mistakenly believing that Defendants are the publishers of a directory with which the consumers have an existing relationship, or that Defendants are affiliated with a trade show or exhibition the consumers have registered for or attended, or with the organizer of such an event.

20. In numerous instances, however, consumers realize that the invoice is for a new service they did not order and do not want. These consumers refuse to pay the invoice and inform Defendants in telephone calls or in writing that the listing was never ordered and should be canceled. In seeking to cancel, many consumers point out that they believed they were updating an existing directory listing, and that Defendants were affiliated with the trade show or exhibition listed on the form, or its organizer. Consumers also frequently state that a directory

5

listing on Defendants' website has no value as advertising or for any other purpose.

21. Defendants respond by telling consumers that the order cannot be canceled, as the ten-day cancellation period has expired. Defendants also warn these consumers that by returning the form, they entered into a legally binding contract that Defendants intend to enforce.

22. Consumers who persist in refusing to pay receive late payment notices and demand letters from Defendants, some of which purport to be from the "Legal Department." Defendants demand payment of the original invoice plus increasing amounts of dunning fees and interest. Defendants also threaten to initiate legal proceedings to enforce their contract. In some instances, consumers end up paying Defendants for the unordered listing simply to put an end to this harassment.

## VIOLATIONS OF THE FTC ACT

23. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

24. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

25. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Internet directory listings, Defendants have represented, directly or indirectly, expressly or by implication, that consumers have a preexisting business relationship with Defendants.

26. In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 25 of this Complaint, consumers do not have a preexisting business relationship with Defendants.

27. Therefore, Defendants' representation as set forth in Paragraph 25 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

28. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Internet directory listings, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants are affiliated or otherwise connected with a particular trade show or exhibition, or the organizer of that event.

29. In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 28 of this Complaint, Defendants are not affiliated or otherwise connected with the particular trade show or exhibition or with the organizer of that event.

30. Therefore, Defendants' representation as set forth in Paragraph 28 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

31. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

32. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions and an order freezing assets;

B. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

      D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID SHONKA  
Acting General Counsel

Dated: March 14, 2013

_____  
GUY G. WARD  
Federal Trade Commission  
55 West Monroe Street, Suite 1825  
Chicago, Illinois 60603  
(312) 960-5634 [telephone]  
(312) 960-5600 [facsimile]  
gward@ftc.gov

Attorney for Plaintiff  
FEDERAL TRADE COMMISSION