THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONSTRUCT DATA PUBLISHERS a.s., a ) <br> foreign corporation, also doing business as ) <br> FAIR GUIDE, ) <br> ) <br> WOLFGANG VALVODA, individually, and ) <br> as an owner, officer, or director of Construct ) <br> Data Publishers a.s., and ) <br> ) <br> SUSANNE ANHORN, individually, and as ) <br> an owner, officer, or director of Construct ) <br> Data Publishers a.s., ) <br> ) <br> Defendants. ) | Civil Action No. 1:13-cv-1999 <br><br> Judge John A. Nordberg <br><br> **Oral argument requested** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO MODIFY THE ASSET FREEZE ORDER**

Defendants Construct Data Publishers ("Construct Data"), Wolfgang Valvoda, and Susanne Anhorn (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to modify the asset freeze order in this case. Specifically, Defendants request that the Court modify the freeze order (1) to allow Defendants to pay their attorneys' fees, and (2) to eliminate the freeze order against Wolfgang Valvoda and Suzanne Anhorn (collectively, "Individual Defendants") or otherwise modify the freeze order to allow the Individual Defendants to pay their reasonable living expenses without having to obtain prior written consent from the FTC. In support of their motion, Defendants state as follows:

## BACKGROUND

**A.     Defendants**

Defendant Construct Data is a foreign-based company that provides searchable internet listings of companies that have participated or will participate in trade shows or exhibitions. Compl. ¶¶ 6, 10, 12; Anhorn Decl. ¶ 3. Construct Data provides its internet listings via its website, www.fairguide.com. Menjivar Decl., Dkt. No. 8, ¶ 8. Construct Data solicits potential customers by sending targeted mailings to trade show participants. Compl. ¶¶ 13-14. Construct Data then advertises for its customers on its website for a yearly fee. Compl. ¶ 16.

The Individual Defendants are a former and current executive of Construct Data. Compl. ¶¶ 7-8; Anhorn Decl. ¶ 1-2; Valvoda Decl. ¶¶ 1-2. Neither of the Individual Defendants is a resident of the United States; Anhorn is a resident of Slovakia, and Valvoda is a resident of Austria. Anhorn Decl. ¶ 12; Valvoda Decl. ¶ 10. While Valvoda has traveled to the United States twice on business since 2011 and occasionally for personal reasons, Anhorn has never been to the United States. Anhorn Decl. ¶ 10; Valvoda ¶ 12. Neither Anhorn nor Valvoda has a personal bank account or personal property in the United States. Anhorn Decl. ¶ 13; Valvoda Decl. ¶ 11.

Anhorn's and Valvoda's only communications with contacts in the United States were limited to communications with U.S. counsel and communications in their capacity as employees of Construct Data to Construct Data's printing and mailing contractor, Microdynamics. Anhorn Decl. ¶ 15; Valvoda Decl. ¶ 13. Neither Anhorn nor Valvoda ever directly contacted Construct Data's U.S. customers. Anhorn Decl. ¶ 9; Valvoda Decl. ¶ 7.

Neither Anhorn nor Valvoda has any ownership interest in Construct Data. Anhorn Decl. ¶ 14; Valvoda Decl. ¶ 12. Valvoda was paid, and Anhorn is being paid, a regular salary for their services as employees of Construct Data. Anhorn Decl. ¶ 14; Valvoda Decl. ¶ 12.

Anhorn and Valvoda also had no involvement in the process of selecting potential U.S. customers or the process of designing a customer's internet listing. Anhorn Decl. ¶ 6; Valvoda Decl. ¶ 5. Anhorn and Valvoda have had no involvement in the handling of customer complaints, the invoicing of customers, or the process of obtaining payment from customers. Anhorn Decl. ¶¶ 10-11; Valvoda Decl. ¶¶ 8-9.

**B.      The Complaint, Temporary Restraining Order, and Preliminary Injunction**

On March 14, 2013, the FTC filed a complaint *ex parte* and under seal for a permanent injunction and other equitable relief against Construct Data, alleging that its activities violated Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). In its complaint, the FTC also alleged in conclusory fashion that each of the Individual Defendants were liable for violations of Section 5(a) solely by virtue of being an "owner, officer, or director of Construct Data" and because each of the Individual Defendants "formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in [the] Complaint." Compl. ¶¶ 7-8. In no other pleading does the FTC either provide any corroboration for or otherwise discuss the Individual Defendants' role, if any, in the alleged unlawful conduct.

The Court granted an *ex parte* temporary restraining order on March 15, 2013. Dkt. No. 14. That order included an asset freeze that did not allow Defendants to pay for attorneys' fees. *See id.* at 7-9. In addition, the freeze order prohibited the Individual Defendants from "spending . . . any funds, real or personal property . . . wherever located, including outside the territorial United States" and "[i]ncurring charges or cash advances on any credit card." *Id.* at 7-8. The freeze order nevertheless did allow the Individual Defendants to pay for "reasonable, usual, ordinary, and necessary living expenses," but only if they received "prior written agreement with the Commission." *Id.* at 9. Given the *ex parte* nature of the temporary restraining order, Defendants had no ability to contest the petition or otherwise challenge the extraordinarily broad scope of the requested relief.

Only after the Court issued the temporary restraining order did the FTC inform Defendants of the pendency of this action. FTC Mtn. For Leave to File by Other Means, Dkt. No. 41, p. 3. Rather than formally serving these papers in accordance with international treaties, the FTC itself sent the complaints by email and overnight delivery. *Id.* On March 18, 2013, the FTC called Mr. Valvoda directly and informed him about the suit and the upcoming hearing on March 21, 2013. *Id*. Mr. Valvoda informed the FTC that he had not been properly served with the papers and would not participate in the Action until he was appropriately served. *Id.*; Valvoda Decl. ¶ 12.

Recognizing that this matter was proceeding rapidly seven time zones away, Defendants hired the Greenberg Traurig law firm to represent their interests at a March 21, 2013 hearing. Anhorn Decl. ¶ 19. After that hearing, Defendants decided not to continue with the Greenberg Traurig law firm. Anhorn Decl. ¶ 20.

The FTC's motion for a preliminary injunction went unopposed, and the Court entered a preliminary injunction on April 17, 2013. Dkt. No. 20. The preliminary injunction contains an asset freeze order that is substantially similar to the one in the temporary restraining order. *Compare id., with* Dkt. No. 14.

On August 19, 2013, Greenberg Traurig filed a motion to withdraw as counsel to Valvoda; this motion was granted on August 22, 2013. Dkt. Nos. 31, 33. On October 30, 2013, Greenberg Traurig filed a motion to withdraw as counsel for Construct Data and Anhorn. Dkt. No. 37; Anhorn Decl. ¶ 20.

### C. The Default Judgment and Permanent Injunction

On November 6, 2013, exactly one week after Defendants' counsel noticed its withdrawal, the FTC filed a motion for entry of default against Construct Data and Anhorn, explaining that it would file a similar motion against Valvoda once he was properly served. FTC Application for Entry of Default, Dkt. No. 39, ¶ 4. On December 20, 2013, the FTC filed a motion for entry of default against Valvoda. FTC Application for Entry of Default, Dkt. No. 48. On January 30, 2014, the FTC filed a motion for entry of default judgment against all Defendants. FTC Mtn. for Entry of Default Judgment, Dkt. No. 52. At the time the FTC filed a motion for entry of default judgment, the FTC was aware that each Defendant was no longer represented by counsel. *See* FTC Mtn. For Leave to File by Other Means, Dkt. No. 41; *see also* Dkt. Nos. 33, 43.

On February 11, 2014, Judge Tharp entered a Default Judgment and Order for Permanent Injunction against all Defendants in this matter. Dkt. No. 55. The Court "t[ook] as true against all Defendants" "[t]he factual allegations in the Commission's Complaint," and the Court entered a default judgment of $9,104,970.67. *Id.* at 6.

The permanent injunction did not independently detail any asset freeze order. Instead, it referred back to, and seemingly incorporated by reference, "(a) the *Ex Parte* Temporary Restraining Order with Asset Freeze, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ('TRO'), entered in this matter on March 15, 2013 and extended on March 27, 2013, and/or (b) the Preliminary Injunction, entered in this matter on April 17, 2013." *Id.* at 7. The Permanent Injunction further provided that "[u]pon payment to the Commission" of the default judgment, "the freeze against the assets of Defendants shall be lifted permanently." *Id.* at 14.

D.  **Defendants' Motion to Vacate the Default Judgment**

Defendants moved to vacate the default judgment and permanent injunction on March 11, 2014. Dkt. No. 57. As Defendants explained, the judgment and permanent injunction is void as against the Individual Defendants because this Court lacks personal jurisdiction over them. Dkt. No. 59 at 5-9. Defendants further demonstrated that good cause exists to vacate the default judgment and permanent injunction and thereby allow the parties to litigate this case on the merits. *Id.* at 9-14. The FTC is currently in the process of briefing its response.

E.  **Uncertainty Regarding The Applicability Of The Freeze Orders**

In addition to the overbreadth of the purported freeze order, Defendants are also compelled to file this motion given the uncertainty concerning the continued applicability of any such order. Generally, "only the permanent injunction matters, once it has been entered," and "[t]he preliminary injunction no longer is the source of obligations." *Certified Grocers of Ill., Inc. v. Produce, Fresh & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen & Helpers Union, Chi. & Vicinity, Ill., Local 703*, 816 F.2d 329, 331 (7th Cir. 1987). Because

5

Defendants have moved to set aside the permanent injunction, Defendants believe that they necessarily have moved to vacate any asset freeze order.

However, there is confusion because the permanent injunction fails to describe any freeze order. It instead seemingly incorporates by reference the freeze orders in the temporary restraining order and preliminary injunction. Rule 65(d) requires that "[e]very order granting an injunction and every restraining order must . . . describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C) (emphasis added). The permanent injunction's incorporation by reference of prior freeze orders plainly violates Rule 65(d). It also adds unnecessary confusion as to whether the preliminary injunction still remains in effect.

In any event, Defendants request that the Court modify any freeze order that is currently in effect and that might be in effect even if the Court sets aside the permanent injunction. For the reasons below, the Court should allow Defendants access to funds for the limited purpose of paying their attorneys' fees, and the Court should eliminate the freeze order against the Individual Defendants or otherwise modify it to allow the Individual Defendants to pay for their reasonable living expenses without requiring them to obtain prior written authorization from the FTC.

**ARGUMENT**

**I.     The Court Should Modify The Freeze Order To Allow Defendants To Pay Their Attorneys' Fees.**

The Court should modify the freeze order to allow Defendants to pay their attorneys' fees. Payment of attorneys' fees is necessary to enable Defendants to fully and fairly litigate this case. Payment of attorneys' fees is also necessary for the Defendants, who are all foreign, to understand and comply with the injunction.

6

### A. Payment Of Attorneys' Fees Is Necessary For Defendants To Fully And Fairly Litigate This Case.

"[C]ourts in this circuit have routinely made . . . allowances to permit some of the frozen assets to be used to pay the lawyers defending against the FTC's suit." *FTC v. QT, Inc.*, 467 F. Supp. 2d 863, 866 (N.D. Ill. 2006) (citing cases). "Such provisions are necessary to enable defendants to obtain representation in order to defend against the FTC's charges." *Id.* Moreover, allowing for payment of attorneys' fees "ensure[s] a level playing field" in litigation. *FTC v. Am. Tax Relief LLC*, 751 F. Supp. 2d 972, 986 (N.D. Ill. 2010). "Defendants are entitled to counsel of their choosing," and it "would be unreasonable to require counsel to continue to represent Defendants without some assurances that he will be compensated for his services." *Id.*

It is thus "[t]ypica[l]" for "a temporary restraining order and preliminary injunction" in a FTC civil suit to "include[] . . . some type of provision for attorneys' fees." *QT, Inc.*, 467 F. Supp. 2d at 866. Indeed, in seemingly every FTC civil case in this Circuit, courts have allowed the defendants to pay their attorneys in order to defend against the FTC's claims. *E.g.*, *FTC v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 575-76 (7th Cir. 1989); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988); *Am. Tax Relief LLC*, 751 F. Supp. 2d at 985-86, 987-90; *QT, Inc.*, 467 F. Supp. 2d at 870.

In this case, the freeze orders in the temporary restraining order and preliminary injunction were atypical because they did not allow Defendants to pay their attorneys' fees in this case. *See* Dkt. 14 at 7-9; Dkt. 20 at 7-9. Nowhere did the Court or the FTC explain why such a deviation from common practice was necessary in this case. Moreover, the permanent injunction seemingly incorporated by reference the freeze orders of the temporary restraining order and preliminary injunction, in plain violation of Rule 65(d), as noted above.

The FTC may argue that *FTC v. Think Achievement Corp.*, 312 F.3d 259 (7th Cir. 2002), prohibits payment of Defendants' attorneys' fees. But that case *supports* payment of attorneys' fees in this case. In *Think Achievement Corp.*, the district court granted summary judgment to the FTC, which the Seventh Circuit affirmed. *Id.* at 261. The district court also ordered payment of attorneys' fees during the underlying litigation, and, after it had granted summary judgment, the district court further ordered the release of more funds to pay the defendant's attorneys' fees in a future criminal prosecution. *Id.* at 262. On the FTC's cross-appeal, the Seventh Circuit held that "[i]t was okay" for the district court to order payment of attorneys' fees *during* the underlying litigation but that the district court erred in ordering the release of funds for the future criminal case. *Id.* The Seventh Circuit explained that "once the court determined that *all* the frozen assets were either a product of fraud or necessary to compensate the victims of the fraud for their losses, [the defendant] had no right to use any part of the frozen money for his own purposes." *Id.* The Seventh Circuit also expressly "limited" its holding "to situations in which the defendant is seeking to tap a fund in which he has no lawful interest to pay a lawyer for *future* services." *Id.*

As in *Think Achievement Corp.*, Defendants in this case are entitled to pay their attorneys while the parties litigate the merits of the FTC's suit. To be sure, the district court has entered a default judgment against Defendants. But Defendants have moved to set it aside and have explained why the default judgment cannot stand. Dkt. 57, 59. Moreover, the district court has never found for the FTC on the merits. The default judgment simply "t[ook] as true" the "factual allegations in the Commission's Complaint." Dkt. 55 at 3. As Defendants have explained, there are numerous untruths in the FTC's complaint. *See* Dkt. 59 at 11-14. Thus, the default judgment was not the type of "final judgment" that the Seventh Circuit had in mind in *Think Achievement Corp. See* 312 F.3d at 262.

In short, in order for Defendants to fully and fairly participate in this litigation, it is necessary that Defendants be able to pay for representation. Indeed, because Defendant Construct Data is a corporate entity, it is *required* to have counsel in order to participate in this litigation. *In re IFC Credit Corp.*, 663 F.3d 315, 318 (7th Cir. 2011). Accordingly, Defendants request that the Court modify the freeze order to allow Defendants to pay their attorneys' fees.

### B. Payment Of Attorneys' Fees Is Necessary For Defendants To Understand And Comply With The Injunction.

As a practical matter, Defendants also need counsel because they are all foreign and not versed in U.S. law. Moreover, the permanent injunction requires Defendants to take actions that only an attorney can do. Among other things, the permanent injunction requires Defendant Construct Data, a corporate entity, (1) within seven days, to "submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury"; (2) within one year, to "submit a compliance report, sworn under penalty of perjury" that, among other things, "describe[s] in detail whether and how that Defendant is in compliance with each Section of this Order"; (3) to submit reports to the FTC that are "sworn under penalty of perjury" and are "true and accurate and comply with 28 U.S.C. § 1746"; and (4) to retain "[a]ll records necessary to demonstrate full compliance with each provision of this Order." Dkt. 55 at 9-13.

It is unreasonable to believe that Defendants would be able to comply with these onerous requirements without the assistance of counsel, and that assistance will necessarily require the payment of fees. Indeed, it is not clear how Defendant Construct Data can even opine on whether it is complying with the permanent injunction unless it can hire and pay an attorney to evaluate the matter.

Thus, to the extent that the Court allows any aspect of the permanent injunction to remain in effect, the Court should modify the injunction to allow Defendants to pay attorneys' fees.

## II. The Court Should Eliminate Or Otherwise Modify The Freeze Order On The Individual Defendants' Assets.

In addition to allowing Defendants access to funds to pay attorneys' fees, the Court should also eliminate or otherwise substantially modify the freeze order on the Individual Defendants.

As Defendants have explained in their memorandum in support of the motion to vacate the default judgment, this Court lacks personal jurisdiction over the Individual Defendants. *See* Dkt. No. 59 at 5-9. As a result, this Court lacks jurisdiction to issue any type of injunction against the Individual Defendants. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 111-12 (1969); *Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*, 714 F. Supp. 296, 302 (N.D. Ill. 1989). Accordingly, the Individual Defendants respectfully request that the Court altogether lift the freeze order against them.

But even if this Court did have personal jurisdiction over the Individual Defendants, the freeze order on the Individual Defendants is much too onerous and far too overbroad. Read literally, under the freeze order, the Individual Defendants cannot buy food, pay to heat their residences, or purchase clothes unless they obtain the FTC's prior written authorization. Dkt. No. 14 at 9; Dkt. No. 20 at 9. Moreover, the freeze order does not describe the circumstances under which the FTC *must* grant authorization to Individual Defendants for them to pay for their reasonable living expenses. *Id.* At present, whether and under what circumstances the Individual Defendants may get relief from the draconian freeze order to meet even basic living expenses depends entirely on the whims of the FTC.

"An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011). The freeze orders in the case restrain the Individual Defendants from engaging in legal

10

conduct—paying for the necessities of everyday life—while deputizing the FTC with the authority to effectively change the scope of the injunction at its will.

Thus, to the extent that the Court does not altogether lift the freeze order against the Individual Defendants, the Court should modify the freeze order to allow the Individual Defendants to pay for their reasonable living expenses without requiring the Individual Defendants to obtain prior written approval from the FTC. *See Amy Travel Serv.*, 875 F.2d at 570 (noting that the freeze order in that case "was later modified to allow for the payment of reasonable living expenses and reasonable attorneys' fees").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request (1) that the Court modify the asset freeze order to allow Defendants to pay attorneys' fees, and (2) that the Court eliminate the asset freeze on the Individual Defendants' assets or otherwise modify the freeze order to allow the Individual Defendants to pay their reasonable living expenses without prior written authorization from the FTC.

Dated: April 1, 2014

Respectfully submitted,

By: */s/ Lori E. Lightfoot*
Lori E. Lightfoot
Chad M. Clamage
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
(312) 782-0600
llightfoot@mayerbrown.com

*Counsel for Defendants*

John Roberti
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
jroberti@mayerbrown.com

*Of Counsel*

11

## **CERTIFICATE OF SERVICE**

I, Lori E. Lightfoot, an attorney, hereby certify that on April 1, 2014, I caused the foregoing to be electronically filed with the Clerk of Court by using the CM/ECF system, which will automatically send a notice of electronic filing to all parties.

Dated: April 1, 2014

By: */s/* Lori E. Lightfoot
Lori E. Lightfoot
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
(312) 782-0600
llightfoot@mayerbrown.com

*Counsel for Defendants*